UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CURTIS SMITH, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Docket No. |
| | ) | |
| GREAT AMERICAN REAL FOOD FAST, | ) | |
| INC., | ) | |
| | ) | |
| Defendant | ) | |

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, through his attorney, states his complaint as follows and demands a jury trial on all counts of his complaint.

The Parties, Jurisdiction, and Venue

1. Plaintiff, Curtis Smith ("Smith"), is a resident of Princeton, Washington County, Maine.

2. Defendant Great American Real Food Fast, Inc. ("GARFF") is a foreign corporation authorized to do business in the State of Maine. Upon information and belief, GARFF is a Connecticut corporation with a principal place of business in Bristol, Hartford County, Connecticut.

3. Pursuant to F.R. Civ. P. 38(b), Smith hereby demands trial by jury on all counts of his complaint.

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1), as this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

1

5. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b)(2).  Under Local Rule 3(b), this action is properly filed in Bangor because the case arises in Washington County.

6. Upon information and belief, GARFF employed more than 100 employees in 20 more calendar weeks in the calendars years 2014, 2015, and 2016.

7. Smith has met the procedural prerequisites for filing this Complaint, having made a dual filing with the Maine Human Rights Commission (MHRC) and the Equal Employment Opportunities Commission (EEOC) on or about May 19, 2016, and having received a right-to-sue letter from the MHRC dated November 28, 2017 and a right-to-sue letter from the Equal EEOC dated November 30, 2017.

8. Smith was employed by GARFF from July 25, 2014 until July 28, 2016.

Facts

9. Smith incorporates by reference the allegations of the foregoing paragraphs.

10. Smith is an African-American.

11. In 2015 and continuing into 2016, Smith was the night shift supervisor and cook at a restaurant owned by GARFF inside the Irving Big Stop in Baileyville, Maine.

12. On or about November of 2015, Smith caught another employee, Terri Hayward, committing theft by giving away free meals to her family and friends in violation of GARFF's rules.  Smith reported this theft to management.  After Smith reported this theft, Terri Hayward told Smith, "I bet you won't say nothin' when my son comes in."

13. Following Smith's report, Max Hayward, another employee who was Terri's son, came into the kitchen during Smith's shift and asked, "Are you the HNIC?"  Smith asked Max what "HNIC" meant, to which Max replied, "Head n _ _ _ _ r in charge."  Max then lifted his

shirt and gestured towards a gun that was tucked into his pants.  Smith reported the threat, as well as the racial slur, to management.

14. In the months that followed, Terri and Max Hayward continued to make racially derogatory comments about Smith.  These comments included calling Smith "darky," telling Smith that "all black people are in a gang" and asking if he was in the Bloods or the Crips, and making references to Smith liking watermelon and fried chicken.  Smith reported this harassment to management and repeatedly asked management to place him on a different shift so he would not have to work with the Haywards.  Management never acquiesced to his request.

15. On or about April of 2016, Smith caught Terri Hayward stealing food from the freezer and putting the food in her vehicle.  Smith reported the theft to management.  On or about May 3, 2016, Terri and Max Hayward came into the kitchen where Smith was working.  Terri told Smith that he was "done for," at which point Max again lifted his shift to expose a gun tucked into his pants.  Smith reported the incident to his manager, Chris Thompson, who sent him home for the night.  Smith subsequently reported the incident to GARFF's home office in Bristol, Connecticut.

16. Thompson told Smith that Terri and Max Hayward would not be returning to work.  However, on May 9, 2016, Smith found out that the Haywards kept their jobs and that he was scheduled to work with them on an upcoming shift.  Smith immediately complained and asked to be switched to a different shift.  Management told Smith that he would have to work with the Haywards if he "wanted to keep his job."

17. Smith did not feel safe, so he left work and filed a Charge of Discrimination with the MHRC.  Weeks later, Smith and GARFF reached an agreement whereby he would return to work under conditions that were acceptable to both parties.

18. On or about July 23, 2016, Craig Bristle, an individual from GARFF's home office, visited the Baileyville restaurant and pressured Smith to drop his Charge of Discrimination. In reference to Smith's pending Charge, Bristle suggested to Smith that, since he was back at work, "all of these matters can go away now." Bristle told Smith that he was "lucky enough to get his job back." Smith told Bristle that he was not going to discuss his claim against GARFF with him.

19. When Smith arrived for his morning shift the following day, he saw that no prep work had been done in the kitchen and that the kitchen was a mess. It was standard practice for the overnight shift to perform prep work for the morning shift so that the morning shift could immediately start serving customers breakfast. Smith reported the situation to Bristle. Bristle responded by saying that he had told the overnight shift not to do any prep and said, "You're lucky you're still here." Smith felt that this was workstation sabotage due to his reluctance to withdraw his Charge of Discrimination, so he left his shift and contacted the undersigned counsel.

20. On July 25, 2016, the undersigned faxed a letter to GARFF's counsel, Carol I. Eisenberg, Esq., saying that Smith would not be bullied into dropping his case and asking that the company cease its retaliatory conduct.

21. On or about July 25, 2016, Smith called GARFF to discuss returning to work. His call was not returned.

22. On July 28, 2016, Attorney Eisenberg wrote a letter to the MHRC stating that Smith's employment would be terminated because he left his shift on July 24. Smith subsequently filed an amended Charge of Discrimination with the MHRC and the EEOC alleging retaliation.

4

### Count I – Racial Harassment in Violation of the MHRA and Title VII

23. Smith incorporates by reference the allegations of the foregoing paragraphs.

24. Smith was subjected to unwelcome harassment based upon his status as an African-American.

25. The harassment directed as Smith was sufficiently severe or pervasive so as to alter the conditions of his employment and create an abusive work environment.

26. The harassment directed at Smith was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and Smith did, in fact, perceive it to be so.

27. GARFF, its agents, or supervisory employees knew about the aforementioned conduct and failed to take immediate and appropriate corrective action.

28. Smith has suffered a financial and human loss as a result of GARFF's actions, entitling him to compensatory damages and a jury trial.

29. GARFF acted in reckless indifference to Smith's rights under the Maine Human Rights Act (MHRA) and Title VII of the Civil Rights Act of 1964 (Title VII), entitling Smith to punitive damages.

WHEREFORE, Smith seeks such damages as will make him whole, including compensatory damages, punitive damages, back pay, reinstatement and/or front pay, together with interest, costs, and reasonable attorneys' fees and expenses, all as provided by law.

### Count II - Whistleblower Retaliation

30. Smith incorporates by reference the allegations in the foregoing paragraphs.

31. Smith, acting in good faith, reported to GARFF orally and in writing multiple violations of the law and conditions that put his own health and safety at risk.

32. In response to his reports, Smith faced further harassment and threats, conditions under which Smith was forced to work with his harassers, and workstation sabotage.

33. Smith's working conditions became so intolerable that a reasonable person in his shoes would have felt compelled to resign.

34. Smith faced changes in the terms and conditions of his employment and was ultimately constructively discharged and/or terminated in retaliation for his whistleblowing activities in violation of the Maine Whistleblowers' Protection Act (MWPA), 26 M.RS. § 833, and the MHRA, 5 M.R.S. § 4551, *et seq.*

35. Smith has suffered a financial and human loss as a result of GARFF's actions, entitling him to compensatory damages and a jury trial.

36. GARFF acted in reckless indifference to Smith's rights under the MHRA, entitling Smith to punitive damages.

WHEREFORE, Smith seeks such damages as will make him whole, including compensatory damages, punitive damages, back pay, reinstatement and/or front pay, together with interest, costs, and reasonable attorneys' fees and expenses, all as provided by law.

<u>Count III - Retaliation in Violation of the MHRA and Title VII</u>

37. Smith incorporates by reference the allegations in the foregoing paragraphs.

38. Following Smith's filing of his Charge of Discrimination, Craig Bristle, a member of GARFF management, pressured Smith to withdraw his Charge.

39. After Smith told Bristle that he would not discuss his Charge of Discrimination with him, Bristle directed the overnight staff to not prep the kitchen for breakfast the following morning, sabotaging Smith's workstation and giving Smith substantially more work when he arrived for the breakfast shift the following morning.

6

40. The following day, the undersigned faxed a letter to GARFF's counsel saying that Smith would not be bullied into dropping his case and asking that the company cease its retaliatory conduct.

41. Smith was fired on or about three days after the undersigned's letter was sent.

42. GARFF's conduct was in retaliation for Smith opposing employment practices made unlawful by the MHRA and Title VII and for filing a complaint concerning the employment discrimination referenced in Counts I and II with the MHRC and the EEOC, in violation of the MHRA and Title VII.

43. Smith has suffered a financial and human loss as a result of GARFF's actions, entitling him to compensatory damages and a jury trial.

44. GARFF acted in reckless indifference to Smith's rights under the MHRA and Title VII, entitling Smith to punitive damages.

WHEREFORE, Smith seeks such damages as will make him whole, including compensatory damages, punitive damages, back pay, reinstatement and/or front pay, together with interest, costs, and reasonable attorneys' fees and expenses, all as provided by law.

<u>Count IV - Retaliation in Violation of 42 U.S.C. § 1981</u>

45. Smith incorporates by reference the allegations in the foregoing paragraphs.

46. By the actions detailed above, among others, GARFF has repeatedly impaired Smith's right to perform and enforce his employment contract with GARFF on the basis of Smith's race in violation of 42 U.S.C. § 1981.

47. As a direct and proximate result of GARFF's unlawful and retaliatory conduct in violation of 42 U.S.C. § 1981, Smith has suffered an economic and human loss for which he is entitled to an award of damages.

48. GARFF's unlawful and retaliatory actions constitute a malicious, willful, and wanton violation of 42 U.S.C. § 1981, for which Smith is entitled to an award of punitive damages.

WHEREFORE, Smith seeks such damages as will make him whole, including compensatory damages, punitive damages, back pay, reinstatement and/or front pay, together with interest, costs, and reasonable attorneys' fees and expenses, all as provided by law.

Count V - Harassment in Violation of 42 U.S.C. § 1981

49. Smith incorporates by reference the allegations in the foregoing paragraphs.

50. Smith was subjected to unwelcome racial harassment by other employees of GARFF.

51. This harassment was so severe or pervasive that a reasonable person in Smith's position would find Smith's work environment to be hostile or abusive and his contractual rights with GARFF impaired.

52. Smith believed his work environment was hostile or abusive as a result of his co-workers' conduct.

53. Management of GARFF knew or should have known about this harassment and failed to exercise reasonable care or take reasonable steps to prevent further racial harassment and failed to promptly correct the harassing behavior.

WHEREFORE, Smith seeks such damages as will make him whole, including compensatory damages, punitive damages, back pay, reinstatement and/or front pay, together with interest, costs, and reasonable attorneys' fees and expenses, all as provided by law.

Dated:  February 21, 2018                    /s/ *Erik M. P. Black*_____
                                             Erik M. P. Black, Esq.; BRN:  4733
                                             GILBERT & GREIF, P.A.
                                             82 Columbia Street
                                             P.O. Box 2339
                                             Bangor, Maine   04402-2339
                                             Attorneys for Plaintiff
                                             (207) 947-2223

8